EXHIBIT A

MICHAEL K. JEANES, CLERK
BY D Concholar DEP.
FILED

12 DEC 10 PM 2:33

Grant Woods (006106)
**GRANT WOODS LAW**
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
Phone: (602) 258-2599
Email: gw@grantwoodspc.com

Michael Riikola, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 363-9217
State Bar No. 005659
Email: mike.riikola@gmail.com

*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| KENNY W. HARRIS, a married man,<br>Plaintiff,<br><br>v.<br><br>DAVID R. SMITH and JANE DOE SMITH, husband and wife; MARICOPA COUNTY, a body politic and corporate; XYZ CORPORATIONS, PARTNERSHIPS, AND LIMITED LIABILITY COMPANIES I-X; JOHN DOES AND JANE DOES I-X,<br><br>Defendants. | No. CV2012-018057<br><br>**CERTIFICATE OF NON-ARBITRABILITY** |

The undersigned certifies that the largest award sought by plaintiff, including punitive damages, but excluding interest, attorneys' fees, and costs **DOES** exceed limits

set by Local Rule for compulsory arbitration. This case **IS NOT** subject to the Uniform Rules of Procedure for Arbitration.

**DATED** this 10th day of December, 2012.

GRANT WOODS LAW

By [signature] for

J. Grant Woods, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 258-2599

Michael Riikola, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 363-9217

*Attorneys for Plaintiff*



COPY

DEC 10 2012

MICHAEL K. JEANES, CLERK
D. CONCHOLAR
DEPUTY CLERK

Grant Woods (006106)
**GRANT WOODS LAW**
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
Phone: (602) 258-2599
Email: gw@grantwoodspc.com

Michael Riikola, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 363-9217
State Bar No. 005659
Email: mike.riikola@gmail.com

*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| KENNY W. HARRIS, a married man,<br>Plaintiff,<br><br>v.<br><br>DAVID R. SMITH and JANE DOE SMITH, husband and wife; MARICOPA COUNTY, a body politic and corporate; XYZ CORPORATIONS, PARTNERSHIPS, AND LIMITED LIABILITY COMPANIES I-X; JOHN DOES AND JANE DOES I-X,<br><br>Defendants. | No. CV2012-018057<br><br>**COMPLAINT**<br><br>(TORT – NON-MOTOR VEHICLE) |

Plaintiff alleges as follows:

**THE PARTIES**

1.    Plaintiff Kenny W. Harris is a licensed professional engineer who was recruited by Maricopa County in 2006 to become the County's Public Works Director and County Engineer. In October of 2007, he was named Assistant County Manager for Public Works and continued as County Engineer. He served Maricopa County and the public until the events described herein which give rise to this complaint.

2.    Defendant David R. Smith was at all times relevant hereto the County Manager of Maricopa County. It is alleged upon information and belief that he is married, and Jane Doe Smith is named as his wife. It is alleged that David R. Smith (hereafter "Smith" or "County Manager Smith") was acting in his official capacity as County Manager and in pursuit of the interests of the marital community at all times relevant herein.

3.    Defendant Maricopa County (hereafter "the County") is a governmental entity, and a body politic and corporate. It is responsible directly and vicariously for the acts and occurrences complained of herein.

4.    Defendants XYZ Corporations, Partnerships, and Limited Liability Companies I-X are fictitiously named defendants herein because other named defendants herein may operate by and through certain organizations and entities whose precise descriptions and forms are currently unknown but all of whom may be responsible in whole or part for the acts, errors, omissions, and events complained of herein and for the damages suffered by plaintiff. Leave of court will be sought to amend this complaint to reflect the true identities of such defendants if and when such information becomes known.

5. John Does and Jane Does I-X are named fictitiously as persons who may have participated in the acts, errors, omissions, and events complained of herein such as to render them responsible in whole or in part for the damages suffered by plaintiff but whose identities are presently unknown. Leave of court will be sought to amend this complaint if and when such information becomes known.

**JURISDICTION AND VENUE**

6. The errors, acts, and omissions giving rise to this action all took place or were caused to occur in Maricopa County, Arizona.

7. This court has proper jurisdiction over all claims raised in this matter pursuant to Art. 6, Section 14 of the Arizona Constitution and other applicable law.

8. This complaint is properly filed in this court pursuant to ARS § 12-401(15) inasmuch as Maricopa County is a party to this action. However, plaintiff is entitled to a change of venue to another and the most convenient county pursuant ARS §§ 12-408(A) and 12-411 and will immediately move this court for transfer to such county when appropriate to do so.

9. Plaintiff has satisfied all the provisions of ARS § 12-821.01 by timely serving a Notice of Claim more than sixty (60) days prior to the date of the filing of this complaint. Defendants denied the Notice of Claim by failing to respond.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

10. After a search had been undertaken to fill the position of County Engineer/Public Works Director and after extending an offer to Kenny Harris for appointment to the position, County Manager Smith announced in November of 2006 that

Mr. Harris had joined the County senior management team. Smith said in that announcement:

> "With the tremendous growth Maricopa County is experiencing, I feel we are incredibly fortunate to have such talent joining the management of our county government. Within five years Maricopa County is projected to grow by approximately 500,000 citizens; and currently our population is more than 3.8 million residents. Clearly we have great challenges ahead. Mr. Harris brings proven strengths to our management team."

11. That same announcement recited that Mr. Harris "comes to Maricopa County extensive experience in urban freeway design and construction, as well as several large-scale public works projects."

12. Then-Chairman of the Maricopa County Board of Supervisors Fulton Brock said at the time of Mr. Harris's appointment:

> "Mr. Harris has more than two decades of exemplary experience in the Phoenix area. His most recent service was as Vice President for Facilities of the Arizona Sports and Tourism Authority where he oversaw the construction of the University of Phoenix Stadium. During his tenure as City Engineer with the City of Phoenix, he was involved with the design and construction of a number of landmark public projects including Phoenix's City Hall, Science Museum, and Central Library. He also served as Director of the Phoenix Development Services Department."

13. The announcement further recited that Mr. Harris is a civil engineer graduate of Notre Dame, has his Professional Engineer Certification and Certificate in Management from the International City Manager's Association, and that he has completed Harvard University's program for Senior Executives in State and Local Government. The announcement noted that Mr. Harris has been involved in a number of community and civic organizations around the Valley including the Thunderbirds, the United Way,

Phoenix Suns Charities, Valley Leadership, Valley of the Sun YMCA, Valley Partnership, and National Forum for Black Public Administrators.

14. As the County and Smith thus knew, Mr. Harris had been intimately involved with and responsible for the planning and development of projects of landmark public importance and actively engaged in outside professional and public service work and charitable activities. They knew that he had served the public energetically and well during his entire career without the slightest suggestion of criticism or impropriety and that he enjoyed that exact personal and professional reputation.

15. Mr. Harris similarly served the County and the public during the entire period of his tenure there, overseeing construction of the new Court Tower and the Sherriff's headquarters project among other County public works.

16. Smith delivered stellar reviews to Mr. Harris in annual management reviews throughout Mr. Harris's tenure at the County. Smith honestly and correctly rated him as "outstanding."

17. Nevertheless, Smith met with Mr. Harris on December 9, 2011, and demanded that Mr. Harris resign his position. To provide background to understand the events involved herein, it is necessary to examine certain County corruption problems that became public in 2011 and Smith's reaction to them.

18. In the latter half of 2011, extensive news coverage in the Phoenix media examined allegations against eleven County employees who were accused of varying types of misconduct (including but not limited to taking tickets and gifts from County

contractors) and who were the subject of an internal County investigation resulting in leaves of absence for certain of the investigated employees.

19. These accused County employees were employed in the Facilities Management Division ("FMD") of the County Public Works Department. The FMD was in the "constellation" of Mr. Harris's duties as Assistant County Manager/Public Works, but the employees were ultimately under the supervision and control of Smith. Smith thus came under immediate and persistent press scrutiny because of the allegations of corruption and conflicts of interest in and among County employees. Smith thus had a motivation to insulate himself from the intense press scrutiny which surrounded this brewing scandal.

20. By September 2011, Smith undertook a campaign to deflect criticism from himself and place it instead on Kenny Harris. Smith began by setting up a premise and pretext for removing Mr. Harris and sacrificing Mr. Harris's career for his own purposes. In a September 1, 2011 "memorandum of caution and advice" to Mr. Harris, Smith raised the issue of County reimbursement to Mr. Harris for payment of dues to a professional fraternity of which Mr. Harris had been a member for years and for which the City of Phoenix had reimbursed his dues during his tenure there. Smith questioned the propriety of the County's reimbursement and asked Mr. Harris to "research this further" and "report to me how you have chosen to resolve this." Smith did not demand that Mr. Harris reimburse the County for these previously-approved dues expenditures.

21. Smith also alleged in that memorandum that Mr. Harris had spent "substantial" County time on civic and charitable causes and alleged additionally that Mr.

Harris had overused his County email account in that regard and had utilized his administrative assistant's time in such activities. Smith made these allegations despite his knowledge that Mr. Harris had not abused his position in any such manner. Nevertheless, Smith asked Mr. Harris to respond to him about these issues and indicate how Mr. Harris would rectify them.

22. Mr. Harris responded quickly to Smith on September 9, 2011, and indicated (1) that although County administration had previously approved his professional fraternity dues reimbursement annually for four years (at $1250 per year), Mr. Harris would reimburse the County for the sums involved (which reimbursement was accomplished); (2) that he had established a separate email account for civic and charitable activities and would use it only from home; and (3) that his assistant would not further assist with non-County projects.

23. Absolutely nothing more was said by Smith to Mr. Harris about any of these matters. In fact, these matters were entirely pretextual and most were originally generated in a wholly unsubstantiated and meritless grievance which had been previously made against Mr. Harris by a County employee who ultimately won Mr. Harris's position, Janet Palacino. This meritless grievance had been thoroughly investigated, found to be unsubstantiated, and closed, as Smith knew. This meritless grievance would figure into subsequent events surrounding Mr. Harris's departure from the County.

24. Several months passed after these events. During the fall and early winter of 2011, Mr. Harris continued his work without criticism of any kind from anybody.

25. Then, on December 6, 2011, Smith met with Mr. Harris. Even though all issues discussed in September had apparently been resolved, Smith told Mr. Harris that "resigning is what [Smith] would have to ask [Harris] to do." Smith told Mr. Harris that he [Harris] would "not want to be around" (1) when the FMD employees who took tickets are faced with termination or suspension, because they might allege that they were "only doing what [Mr. Harris] does," whereupon Mr. Harris immediately responded that he was not involved in any such activity and that he in fact had questioned and criticized repeated selection of certain vendors in the FMD; and (2) to have to explain the reimbursement of his fraternity dues, whereupon Mr. Harris said he would be happy to explain the details of that issue to anyone, to which Smith replied that Mr. Harris had violated statutes, personally benefitted, and committed a crime.

26. Smith further said that he appreciated that Mr. Harris had reimbursed the fraternity dues, but "that was probably not going to be enough." Smith said that his "advisors" persuaded him that the things Mr. Harris had done deserved termination and Smith was going to give him a chance to resign. Mr. Harris responded that he had complied with everything discussed in September and that no subsequent issues of any kind had arisen since then. Smith told Mr. Harris that he was "troubled" trying to solve all the problems with the FMD scandal and that he needed to be "balanced" in "dishing out punishment", and that he was concerned about being seen as having let someone "off the hook" by giving them "less [punishment] than they deserved."

27. Then, Smith called a meeting with Mr. Harris on December 9, 2011 in order to execute his plan to sacrifice Kenny Harris. Smith told Mr. Harris that the issues

outlined in Smith's September 1 memorandum were "back and more significant." Smith again told Mr. Harris that even though Mr. Harris had paid back the professional fraternity dues, there was a "substantial question" about whether Mr. Harris had violated state law, committed a crime, and benefitted personally from the fraternity dues arrangement (even though it had been fully approved by the County's MCDOT finance officer); moreover, Smith acknowledged to Mr. Harris that Smith was under pressure to "punish" the eleven FMD employees who had been accused of various levels of wrongdoing and that Mr. Harris might be within that group.

28. Smith told Mr. Harris that Smith's "advisors" told him that he had no other choice but to ask Mr. Harris to submit his resignation by Monday, December 12, 2011. Smith asked Mr. Harris to submit a resignation letter falsely stating that he had decided to pursue other interests. Smith stated that this letter would be put into Mr. Harris's HR file and the contents of it would be used to inform County staff and would be provided to the media if they requested a reason for Mr. Harris's resignation. Smith told Mr. Harris to use an effective date of Friday, December 16, 2011, and that Smith would provide Mr. Harris with a positive letter of recommendation.

29. Smith further told Mr. Harris that Smith did not agree with the City of Phoenix's support of community-based or fraternal organizations. Smith contended that Mr. Harris may have violated a state statute if highway user revenue funds were used for reimbursement of professional fraternity dues. Smith again said that he "appreciated" that Mr. Harris had reimbursed the full amount of the dues, but said that Mr. Harris had

somehow "benefitted" by "paying yourself" with taxpayer funds "in error" in Smith's judgment. Smith said he "could find no one who feels differently than I do."

30. Smith stated that he had not given an Arizona republic reporter a copy of the September 1 memorandum (which outlined the resolved matters which Smith was now resurrecting), that he did not wish to give it to her, and said that the reporter would need to make special efforts to obtain it. He also stated that he had reviewed Mr. Harris's email account during the course of the investigation of the meritless grievance brought by Janet Palacino (referred to above) and "stumbled" upon emails from charitable and church sources. Smith said he did not want to give the reporter the September 1 memorandum because it was "not a part of your personnel file" and was not a part of the documents which the reporter had received in connection with her reporting of the investigation of the eleven FMD employees. Smith said that he fully expected a story to run in the Arizona Republic about the FMD employees and other topics that next Sunday or Monday (December 11 or 12, 2011) and that the story would refer to Mr. Harris and to the meritless Palacino grievance.

31. Smith further stated that Mr. Harris had 300 hours of unused vacation time with a value of $28,000, and that Mr. Harris had "a lot of contacts that can help you get another job." Mr. Harris asked Smith what would happen if he did not go along with Smith's request. Smith said he would have to terminate him and that Mr. Harris would be unable to appeal that decision and that severance consideration would be off the table. At no time did Smith give any other or additional reasons for demanding Mr. Harris's resignation.

32. Mr. Harris refused to resign, because he was absolutely not involved in any misconduct of any kind, either personally or indirectly through implication resulting from the scandal involving the suspended FMD employees. In a letter to Smith of December 12, 2011, Mr. Harris once again explained to Smith that he had reimbursed the County the entire amount of the previously-approved fraternity dues and that Mr. Harris could not "sign away his rights" based upon the reasons that Smith had voiced to him, including Smith's pretextual critique of Mr. Harris's civic, charitable, and church activities. Smith thereupon delivered a letter to Mr. Harris at his residence firing him on December 12, 2011.

33. The timing of Smith's actions was not coincidental or adventitious. Smith's actions against Mr. Harris came in the midst of extensive media reporting concerning the misconduct of eleven FMD employees. The media in fact immediately covered the story of Mr. Harris's termination, as fully expected and predicted by Smith, based upon the ethics investigation of the eleven FMD employees and the meritless Palacino grievance.

34. The timing and circumstances of Smith's actions against Mr. Harris and the press coverage associated therewith have had the inevitable result (as fully expected, predicted, and desired by Smith) of creating the false public impression that Mr. Harris was somehow responsible for the culture of misconduct among the FMD employees and is himself implicated in similar misconduct, all of which is entirely untrue, as Smith and his unnamed "advisors" know.

35. Smith's action in firing Mr. Harris at the time and in the manner he did, knowing that the press would cover it in the exact manner in which it did, created this

wholly false and defamatory public impression, placed Mr. Harris in an entirely false light (through the innuendo that Mr. Harris lacked honesty and integrity in both his private and public conduct), and served to insulate Smith from further criticism and scrutiny as the County official ultimately responsible for the conduct of other County employees under investigation.

36. Thus, Smith severely damaged Mr. Harris in pursuit of Smith's own purposes and personal gain by creating the impression that he was taking decisive action with respect to County corruption, entirely at the expense of Mr. Harris's professional career and reputation. The stated reasons which Smith gave to Mr. Harris for demanding his resignation were thus dishonest in fact, and were entirely a pretext for his actions which were designed to benefit himself and others in County government.

37. Smith further published these false, defamatory, and pretextual allegations and ascriptions to Mr. Oscar Tillman, local President of the NAACP, and, upon information and belief, to others whom discovery and disclosure will reveal.

**COUNT ONE**

**WRONGFUL TERMINATION**

38. Plaintiff realleges all preceding paragraphs above.

39. Under Arizona statutory law, ARS § 23-1501(3)(d), a public employee has a right to be free from wrongful termination of employment if the employee has a right to continued employment under the United States Constitution, the Arizona Constitution, or any applicable regulation, policy, or practice of any subdivision of the state or other public entity.

40. The Ethics Policy of Maricopa County states in pertinent part as follows:

> "All Maricopa County employees, elected and appointed officials, volunteers, and the members of appointed boards, committees, and commissions, shall maintain unquestionable standards of high personal integrity, truthfulness, honesty, and fairness in the exercise of their official responsibilities. * * *
>
> All public servants shall carry out the public's business in a manner that benefits the public interest and the common good. * * * They shall not exceed their authority, breach the law, act dishonestly, nor directly or indirectly request others to do so. They shall observe the highest standards of ethical behavior and discharge faithfully their duties and responsibilities, regardless of personal considerations[.] They shall protect the County's ...reputation through professional conduct that is above reproach. This means treating co-workers and all members of the public with respect, courtesy, fairness, honesty, and integrity."

41. Maricopa County Employee Merit Rule 11 – Code of Ethics reads in pertinent part as follows:

> "11.01 CONDUCT AND REQUIREMENTS IN GENERAL
>
> A. The maintenance of high standards of honesty, integrity, impartiality and conduct by county employees is essential to assure the proper performance of county business and the maintenance of confidence by citizens in their county government.
>
> * * *
>
> 11.02 SPECIFIC CONDUCT AND RESPONSIBILITIES
>
> * * *
>
> G. Employee's official acts must reflect impartiality. All official decisions and actions must be determined by impersonal considerations, free from any favoritism, prejudice, personal ambition, or partisan demands.

42. The Ethics Policy of Maricopa County and Rule 11 of the Maricopa County Code of Ethics constitute regulations, policies, and practices of Maricopa County, a public entity, within the meaning of Arizona law, and Smith was subject to these regulations, policies, and practices during his tenure as County Manager. Therefore, Mr. Harris had the right to continued employment free from conduct which violated the express regulation of County official and employee conduct and express policies and practices of honesty-in-fact and impartiality required of all County officials and employees. Smith and his as-yet unidentified "advisors" have violated these regulations, policies, and practices for their own interests and gain, entirely at the expense of Mr. Harris's professional career, his right to be free from embarrassment, anxiety, and humiliation, and his personal and professional reputation.

43. Moreover, Mr. Harris enjoys the right to be free from wrongful termination under the common law. He cannot be terminated for expressed reasons which are dishonest-in-fact, meritless, and pretextual, all of which violate the covenant of good faith and fair dealing implicit in every contract of employment, including employment-at-will contracts. Smith caused the County to breach this essential term of Mr. Harris's employment, which breach is tortious and which entitles Mr. Harris to damages in tort.

44. The acts, errors, and omissions complained of herein were the proximate cause of damages to plaintiff, including but not limited to severe damage to his future employability.

///

## COUNT TWO

## STATE LAW ACTIONS FOR DEFAMATION AND INVASION OF PRIVACY (FALSE LIGHT), AND ACTIONS FOR VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS

45. Plaintiff realleges all preceding paragraphs above.

46. Mr. Harris has a constitutionally protectable property interest in his prospective business advantages, his employability, and his reputation, and a constitutionally protectable liberty interest in being free from governmental action which (a) causes his termination from employment for wrongful, false, and pretextual reasons, (b) stigmatizes and defames him, and (c) invades his privacy and places him in a false light, all of which occurred here without Mr. Harris having been afforded due process of law, in violation of the United States and Arizona Constitutions.

47. The conduct of County Manager Smith, under the color of state law, in firing Mr. Harris in the manner and at the time in which it occurred, had the precise effect desired by Smith: namely, stigmatizing and defaming Mr. Harris (by sacrificing Mr. Harris as publicly to blame for the misconduct of other County employees and as himself implicated in similar misconduct, and deflecting public and press criticism away from Smith), and invading Mr. Harris's privacy by placing Mr. Harris in a false light, because the effect of these actions were to implicate Mr. Harris in a controversy in which it is alleged that other County employees, and by implication Mr. Harris himself, were engaged in illegal, corrupt, and unethical conduct in violation of state statutes and County ethics policies and regulations.

48. None of the allegations against other County employees (namely, the FMD employees under investigation) pertain nor could pertain to any conduct of Mr. Harris. Mr. Harris directly denied and contested the accuracy of any charges or implications directed against him in every interaction he had with Smith on these subjects.

49. Nevertheless, and with full knowledge that his conduct would result in damage to Mr. Harris's career and reputation, Smith wrongfully fired Mr. Harris knowing that his stated reasons for doing so were false and pretextual, that his action in terminating Mr. Harris would be covered by the press and thus would be instantly made public, and which would inevitably result in public and press association of Mr. Harris with wrongful and illegal conduct in spite of Mr. Harris's complete innocence and spotless record and reputation in that regard, and that the effect of Smith's actions would be to defame Mr. Harris *per se* in the eyes of all interested persons and the public at large.

50. These actions were taken by Smith with knowledge of the falsity of the defamatory implications and the false light in which Mr. Harris would be placed, or in reckless disregard thereof, and the statements and implications of the actions of Smith inferable therefrom exceed any privilege even remotely applicable to Smith's statements and actions. As such, the conduct of Smith was defamatory and placed Mr. Harris in a false light, causing damages to Mr. Harris, all in violation of Arizona law.

51. Moreover, Mr. Harris was never given a meaningful opportunity to be heard by an impartial third party fact finder with respect to any real or pretextual reasons stated for his termination and with respect to both the manner and the timing of his termination and the cumulative effect these actions would have upon him and his protectable interests.

Indeed, Mr. Harris was erroneously told by Smith that he had no right to be heard with respect to any issues concerning his termination.

52. Mr. Harris was therefore deprived of his rights to due process of law under the circumstances, in violation of the United States and Arizona Constitutions. The conduct of the County and County Manager Smith complained of herein (and of others under its putative supervision and control and in its employ whose identities are as yet unidentified but for whose conduct the County is both primarily and vicariously liable) supports claims under both state law and under 42 USC § 1983 and other applicable law.

53. The acts, errors, and omissions complained of herein were the proximate cause of damage to plaintiff.

**JURY TRIAL**

54. Plaintiff requests a trial by jury.

**PRAYER FOR RELIEF**

Plaintiff Kenny W. Harris prays for judgment against the defendants as follows:

(a) General damages in an amount to be proven at trial, including but not limited to damages to reputation, prospective professional and business advantages, earning capacity, emotional distress, lost profits, and damages resulting from deprivation of constitutional rights, humiliation, embarrassment, invasion of privacy, defamatory falsehoods and publication of same, and other general damages as allowed by law;

(b) Punitive damages to the extent allowed under Arizona law against individual defendants;

(c) Costs of suit and attorneys' fees as allowed by law;

(d) Such other and further relief as the Court and jury deem just and reasonable under the circumstances.

**DATED** this 10th day of December, 2012.

GRANT WOODS LAW

By [signature]

J. Grant Woods, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 258-2599

Michael Riikola, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 363-9217

*Attorneys for Plaintiff*

MICHAEL K. JEANES, CLERK
BY M. De La Cruz DEP
FILED
DEC 14 2012 AM 8:40

Grant Woods (006106)
**GRANT WOODS, P.C.**
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
Phone: (602) 258-2599
Email: gw@grantwoodspc.com

Michael Riikola, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 363-9217
State Bar No. 005659
Email: mike.riikola@gmail.com

*Attorneys for Plaintiff*

ORIGINAL

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

KENNY W. HARRIS, a married man,
Plaintiff,

v.

DAVID R. SMITH and JANE DOE SMITH, husband and wife; MARICOPA COUNTY, a body politic and corporate; XYZ CORPORATIONS, PARTNERSHIPS, AND LIMITED LIABILITY COMPANIES I-X; JOHN DOES AND JANE DOES I-X,

Defendants.

No. **CV2012-018057**

**SUMMONS**

If you would like legal advice from a lawyer, contact the Lawyer Referral Service at
602-257-4434
or
www.lawyerfinders.org.
Sponsored by the
Maricopa County Bar Association

**THE STATE OF ARIZONA TO:**

**Maricopa County**

YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable, in this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona -- whether by direct service, by registered or certified mail, or by publication -- you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete,

exclusive of the day of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the Director. Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return. Rule 4, Ariz. R. Civ. Proc., A.R.S. §§ 20-222, 28-502, 28-503.

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the plaintiff's attorney. Rules 5 and 10(d), Ariz. R. Civ. Proc., A.R.S. § 12-311.

SIGNED AND SEALED this date: DEC 12 2012.

**MICHAEL K. JEANES, CLERK**

CLERK OF THE SUPERIOR COURT

By: ______ J. Kiraly Deputy Clerk

Deputy Clerk

Grant Woods Law
40 N. Central Avenue, Ste. 2250
Phoenix, AZ 85004
(602) 258-2599

MICHAEL K. JEANES, CLERK
RECEIVED CCC #6
DOCUMENT DEPOSITORY

12 DEC 14 AM 9:22

FILED
BY M. DE LA CRUZ, DEP

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

**KENNY W. HARRIS a married man,**

Plaintiff,

vs.

**DAVID R. SMITH and JANE DOE SMITH, husband and wife et al**

Defendant.

Case Number: CV2012-018057

**AFFIDAVIT OF SERVICE**

Received by HOT SHOT DELIVERY INC. on the 12th day of December, 2012 at 3:07 pm to be served on **Maricopa County c/o Board of Supervisors, 301 W Jefferson, 10th Floor, Phoenix, AZ 85003**.

I, Audra Evans Badge no. 8398, being duly sworn, depose and say that on the **13th day of December, 2012** at **10:30 am**, I:

**PERSONALLY:** served by delivering a true copy of the **Summons, Complaint, Certificate of Non-Arbitrability** with the date and hour of service endorsed thereon by me, to: **Laverna Wilson** as **Special Deputy Clerk** for **Maricopa County c/o Board of Supervisors** at the address of: **301 W Jefferson, 10th Floor, Phoenix, AZ 85003**, and informed said person of the contents therein in compliance with state statutes and stating to me at the time of service that he/she is authorized to accept service of process.

I certify that I am over the age of 21, have no interest in the above action, and am a Certified Process Server, within the county of Maricopa, Arizona, in good standing, and am fully qualified to serve process in this cause.

Subscribed and Sworn to before me on the 13th day of December 2012 by the affiant who is personally known to me.

NOTARY PUBLIC

OFFICIAL SEAL
SHARIE L. LEE
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Feb. 16, 2015

Audra Evans Badge no. 8398
Process Server

**HOT SHOT DELIVERY INC.**
**236 East Pima Street**
**Suite 106**
**Phoenix, AZ 85004**
**(602) 277-4747**
Our Job Serial Number: DEK-2012004067
Ref: Kenny Harris

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5m

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
Michelle Paigen
12/19/2012 11:14:00 AM
Filing ID 5042304

Grant Woods (006106)
**GRANT WOODS LAW**
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
Phone: (602) 258-2599
Email: gw@grantwoodspc.com

Michael Riikola, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 363-9217
State Bar No. 005659
Email: mike.riikola@gmail.com

*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

KENNY W. HARRIS, a married man,
Plaintiff,

v.

DAVID R. SMITH and JANE DOE SMITH, husband and wife; MARICOPA COUNTY, a body politic and corporate; XYZ CORPORATIONS, PARTNERSHIPS, AND LIMITED LIABILITY COMPANIES I-X; JOHN DOES AND JANE DOES I-X,

Defendants.

No. CV2012-018057

**NOTICE OF FILING ACKNOWLEDGMENT OF WAIVER OF SERVICE**

NOTICE IS HEREBY GIVEN that plaintiff files herewith the acknowledgement of waiver of service on behalf of David R. Smith and Jane Doe Smith entered into pursuant to the agreement of the parties.

**DATED** this 19th day of December, 2012.

GRANT WOODS LAW

By /s/J. Grant Woods
J. Grant Woods, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 258-2599

Michael Riikola, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 363-9217

*Attorneys for Plaintiff*

Copy of the foregoing e-filed this 19th day of December, 2012, and a copy e-mailed to:

Brandon Newton, Esq.
Maricopa County Attorney Civil Services Division
222 N. Central Ave., Ste. 1100
Phoenix, AZ 85004-2206

/s/Michael Riikola

Grant Woods (006106)
**GRANT WOODS LAW**
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
Phone: (602) 258-2599
Email: gw@grantwoodspc.com

Michael Riikola, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 363-9217
State Bar No. 005659
Email: mike.riikola@gmail.com

*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

KENNY W. HARRIS, a married man,
Plaintiff,

v.

DAVID R. SMITH and JANE DOE SMITH, husband and wife; MARICOPA COUNTY, a body politic and corporate; XYZ CORPORATIONS, PARTNERSHIPS, AND LIMITED LIABILITY COMPANIES I-X; JOHN DOES AND JANE DOES I-X,

Defendants.

No. CV2012-018057

**ACKNOWLEDGMENT OF WAIVER OF SERVICE**

Pursuant to the agreement of the parties, Brandon Newton as counsel for David R. Smith and Jane Doe Smith ("the Smiths") hereby acknowledges that he has the authority to and hereby does waive service of process of the summons and complaint in this matter

upon the Smiths and agrees that the Smiths will not raise any defense relating to service of process upon these defendants, and further that he has received a copy of the complaint and certificate of non-arbitrability on December 14, 2012.

ACKNOWLEDGED: ______________________
Brandon Newton
Counsel for Smith Defendants

**DATED** this 18th day of December, 2012.

GRANT WOODS LAW

By /s/J. Grant Woods
J. Grant Woods, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 258-2599

Michael Riikola, Esq.
40 North Central Ave., Suite 2250
Phoenix, Arizona 85004
(602) 363-9217

*Attorneys for Plaintiff*

Copy of the foregoing e-filed this 19th day of December, 2012, and a copy e-mailed to:

Brandon Newton, Esq.
Maricopa County Attorney Civil Services Division
222 N. Central Ave., Ste. 1100
Phoenix, AZ 85004-2206

/s/Michael Riikola