**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin W. Harris,<br><br>Plaintiff,<br><br>v.<br><br>David R. Smith; County of Maricopa, et al.,<br><br>Defendants. | No. CV-12-2717-PHX-DGC<br><br>**ORDER** |

Before the Court is the motion to dismiss filed by Defendants Maricopa County and David R. Smith. Doc. 5. The motion is fully briefed. For reasons stated below, the Court will grant the motion in part and remand the case to state court.[1]

**I.  Background.**

The County recruited Plaintiff Kevin W. Harris to become its Public Works Director in 2006. Doc. 1-2 at 5-22, ¶¶ 1, 10. Harris was subsequently named Assistant County Manager for Public Works in October 2007. *Id.*, ¶ 1. In these positions, Harris oversaw the construction of various public work projects. *Id.*, ¶ 15.

Misconduct allegations against 11 employees in the Facilities Management Division ("FMD") of the County Public Works Department surfaced and resulted in local news coverage in 2011 (the "FMD employee scandal"). *Id.*, ¶¶ 18-19. Smith was the County Manager who supervised the employees implicated in the scandal. *Id.*, ¶ 19.

---

[1] Defendants' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

On September 1, 2011, Smith sent Harris a "memorandum of caution and advice" regarding the County's reimbursement to Harris for his professional fraternity dues, Harris's alleged overuse of his County email account for civic and charitable causes, and Harris's alleged misuse of his administrative assistant's time. *Id.*, ¶¶ 20-21. The memorandum requested that Harris research the issues and report to Smith on how the issues had been resolved. *Id.*, ¶ 21. Janet Palatino, a County employee, had previously filed a grievance (the "Palatino grievance") against Harris that raised similar issues; the matter was closed after an investigation revealed that the grievance was unsubstantiated. *Id.*, ¶ 23.

Harris responded to the memorandum on September 9, 2011, and informed Smith that he would repay the County for its previous reimbursement to him, that he would use a separate email account for his civic and charitable activities, and that his assistant would no longer assist him with non-County projects. *Id.*, ¶ 22.

Smith met with Harris on December 6, 2011, and demanded his resignation. *Id.*, ¶¶ 17, 25. Smith informed Harris that his repayment was not sufficient to deflect the appearance of wrongdoing, and that – in light of the FMD employee scandal – all County employees needed to receive appropriate and commiserate punishment. *Id.*, ¶¶ 25-26.

Smith met with Harris again on December 9, 2011, and at this meeting told Harris that the issues outlined in the September 1, 2011, memorandum remained unresolved. *Id.*, ¶ 27. Smith stated that he appreciated Harris's repayment of the prior reimbursement, but that in his judgment the appearance of the personal benefit obtained from taxpayer funds had not been deflected and that he "could find no one who feels differently[.]" *Id.*, ¶ 29. Smith told Harris that he was under pressure to punish the 11 FMD employees accused of misconduct, and that he suspected that Harris might be part of that group. *Id.*, ¶ 27. Smith asked Harris to submit a resignation letter by Monday, December 12, 2011, stating that he had decided to pursue other interests. *Id.*, ¶ 28. Smith told Harris that the letter would remain in his employee file, and that the file's contents would be provided to the media in response to any request for information about the resignation. *Id.* Harris

told Smith that he expected that a newspaper story would soon run about the FMD employee scandal and that the story would refer to Harris and the Palatino grievance. *Id.*, ¶ 30. Smith encouraged Harris to resign by reminding him of his 300 hours of unused vacation time that was worth $28,000, and promising to provide Harris with a positive letter of recommendation and to make his contacts available to help Harris find new employment. *Id.*, ¶¶ 28, 31. If Harris refused to resign, Smith told Harris that he would be terminated without severance and without the right to appeal the termination decision. *Id.*, ¶31.

Harris did not resign, and in a letter dated December 12, 2011, he informed Smith that he could not "sign away his rights" based on Smith's stated reasons. *Id.*, ¶ 32. That same day, Smith sent Harris a letter firing him. *Id.*

The media immediately covered Harris's termination in the manner predicted by Smith – it referred to both the FMD employee scandal and the Palatino grievance. *Id.*, ¶ 33. Smith told Oscar Tillman, local president of the NAACP, about the events leading up to Harris's termination. *Id.*, ¶ 37.

Harris claims that Defendants' actions damaged his professional reputation and career. *Id.*, ¶ 36. The complaint asserts five causes of action: (1) wrongful termination; (2) breach of the covenant of good faith and fair dealing; (3) defamation; (4) invasion of privacy (false light); and (5) a due process § 1983 claim.

**II.    Legal Standard.**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2]

**III.    Analysis.**

   **A.    Due Process Violation Under 42 U.S.C. § 1983.**

Count two asserts a claim for violation of due process pursuant to 42 U.S.C. § 1983. Doc. 1-2 at 5-22, ¶¶ 45-53. The complaint alleges that Defendants' actions deprived Harris of his "constitutionally protectable property interest in his prospective business advantages, his employability, and his reputation, and [his] constitutionally protectable liberty interest in being free from governmental action which (a) causes his termination from employment for wrongful, false, and pretextual reasons, (b) stigmatizes and defames him, and (c) invades his privacy and places him in a false light" without providing the requisite due process. *Id.*, ¶¶ 46, 51-52. Defendants argue that Harris has not alleged facts sufficient to state a cognizable constitutional claim. Doc. 5 at 8.

"Procedural due process protections extend only to those property interests created by an independent source, such as state law." *Curtis v. City of Redmond*, 303 Fed. Appx. 560, 561 (9th Cir. 2008) (quotation marks and citations omitted). Under Arizona law, an at-will employee has no property interest in his employment. *McLeod v. Chilton*, 643 P.2d 712, 721 (Ariz. Ct. App. 1981) ("No property right is involved when the individual has only an abstract need or desire for the job, rather than a legitimate claim of entitlement to that particular employment based on contract, statute or regulation." (citations omitted)). Harris concedes that at-will employees generally do not have property interests, but argues that his property interest arose from the County's waiver of its right to treat him as an at-will employee. Doc. 12 at 15. Harris argues that the County waived this right when it failed to terminate him for any cause or no cause and instead

---

   [2] In support of their motion to dismiss, Defendants have presented evidence outside the pleadings. Doc. 5, Exs. 1-2. Such information can be considered only if the Court converts the motion to a motion for summary judgment. Fed. R. Civ. P. 12(d). The Court will not convert the motion, and therefore has not considered Defendants' exhibits.

1 undertook an investigation to determine the appropriateness of his termination. Doc. 12 at 9. In essence, Plaintiff is arguing that an employer cannot investigate facts potentially leading to an employee's termination without forfeiting its right under Arizona law to treat the employee as at-will – the employer must terminate the employee without investigation to preserve its at-will rights. Such a rule clearly would be bad public policy; it would encourage employers to terminate employees without first investigating facts related to their termination. More importantly, Plaintiff cites no court case from inside or outside Arizona that has adopted such a view. The Court will apply Arizona's settled law that an at-will employee has no property interest in his employment. *McLeod*, 643 P.2d at 721.

The Supreme Court has held that an individual who suffers loss at the hands of a governmental entity may assert a liberty-interest claim only when the government makes a "charge against him that might seriously damage his standing and association in the community." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 574 (1972); *see also Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998) ("harm to reputation alone is insufficient to implicate an individual's liberty interest."); *Bishop v. Wood*, 426 U.S. 341, 350 (1976) ("The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."). As the Ninth Circuit has explained, "a charge which infringes one's liberty can be characterized as an accusation or label given the individual by his employer which belittles his worth and dignity as an individual and, as a consequence, is likely to have severe repercussions *outside* of professional life." *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 (9th Cir. 1976) (emphasis added). To raise a protected liberty interest in the employment context, a plaintiff must allege that the accuracy of the stigmatizing charge against him is contested, that there is some public disclosure of the charge, and that the charge is made in connection with termination of employment. *See Brady v. Gebbie,* 859 F.2d 1543, 1552 (9th Cir. 1988).

The complaint alleges that Smith's objective in terminating Harris was to

stigmatize and defame Harris and to place Harris in a false light because the effect of the termination was "to implicate Mr. Harris in a controversy in which it is alleged that other employees, and by implication Mr. Harris himself, were engaged in illegal, corrupt and unethical conduct[.]" Doc. 1-2 at 5-22, ¶ 47.  The complaint fails, however, to allege that the Defendants publicly labeled Harris as being associated with the FMD employee scandal or provided any public information that "can be characterized as an accusation or label . . . which belittles his worth and dignity as an individual[.]" *Stretten*, 537 F.2d at 366.  Instead, the complaint alleges that because Harris was terminated at a time when the FMD employee scandal was highly publicized, it was inevitable that the termination would result in "public and press association of Mr. Harris with wrongful and illegal conduct[.]" Doc. 1-2 at 5-22, ¶ 49.  Defendants argue that no liberty interest is involved because Harris has not alleged that Defendants publicly disclosed stigmatizing information.  Doc. 5 at 9.  The Court agrees.  *See Bishop*, 426 U.S. at 348 (finding that unpublicized accusations do not infringe constitutional liberty interests because they cannot harm "good name, reputation, honor, or integrity."); *see also McLeod*, 643 P.2d at 721 ("[I]t is to be noted that the stigma which attaches to the mere fact of dismissal alone, or dismissal where no statement or reasons is given, does not give rise to a liberty claim." (citations omitted)).

As to the alleged liberty interest related to Harris's right of privacy (Doc. 1-2 at 5-22, ¶46), the invasion of privacy that places a person in a false light does not come within the "zones of privacy" created by specific constitutional guarantees.  *See Paul v. Davis*, 424 U.S. 693, 713 (1976) (declining to extend the "zone of privacy" to protect against the state's disclosure of an official act such as an arrest).  "Rather, his interest in [privacy] is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions." *Id.* at 711-12.  Because Harris has failed to allege a property or liberty interest protected by the Constitution or laws of the United States, the Court will grant Defendants' motion to dismiss his § 1983 claim.

**B.     Remand to State Court.**

With dismissal of Plaintiff's § 1983 claim, only state law claims remain and the Court has "a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 351 (1988); *see* 28 U.S.C. § 1367(c)(3). Indeed, "it is generally preferable for a district court to remand remaining pendent claims to state court[.]" *Harrell v. 20th Century Ins. Co.,* 934 F.2d 203, 205 (9th Cir.1991); *see also* 28 U.S.C. § 1447(c). Such claims are better litigated in state court. *See Carnegie-Mellon*, 484 U.S. at 350 n. 7 ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). Because this case is at an early stage, the Court will not exercise supplemental jurisdiction over the remaining state law claims and instead will remand this action to state court. *Id.* at 351-52 ("remand . . . will better accommodate [*Gibbs*'] values than will dismissal of the case, [and] the animating principle behind the pendent jurisdiction doctrine supports giving a district court discretion to remand when the exercise of pendent jurisdiction is inappropriate.").

**IT IS ORDERED:**

1. Defendant's motion to dismiss (Doc. 5) is **granted** in part with respect to Plaintiff's § 1983 claim.
2. The Clerk shall **remand** this action to state court.

Dated this 15th day of March, 2013.

_____
David G. Campbell
United States District Judge